## GUNTER & SUMMERFIELD v. W. E. COBB.

### No. 2670.

**1. Levy Upon Personal Property—Sale.**—It is ordinarily necessary to the validity of a levy upon personal property that the officer take such possession of the thing levied upon as its nature renders practicable. It is also ordinarily necessary that such property should be at the place of sale and subject to inspection by persons desiring to purchase.

**2. Statutory Levy Upon Live Stock in the Range.**—Article 2293, Revised Statutes, provides that "A levy upon horses, * * * cattle, or hogs running at large in a range, and which can not be herded or penned without great inconvenience and expense, may be made by designating by reasonable estimate the number of animals, and describing them by their marks and brands, or either; such levy shall be made in the presence of two or more credible persons, and notice thereof shall be given in writing to the owner or his herder or agent, if residing within the county and known to the officer." The statute, article 2314, further provides, that "When a levy is made upon * * * cattle or hogs running at large in the range, under article 2293, it is not necessary that such stock or any part thereof should be present at place of sale, and the purchaser at such sale is authorized to gather and pen such stock and select therefrom the number purchased by him." Construing these provisions, *held:*

1. "Running at large in the range" will apply to cattle running at large with other cattle in a pasture of about 400,000 acres, and including parts of three counties, and intersected with roads, although the entrances may be guarded.

2. In making a levy and sale upon cattle so running at large, under article 2293, the sheriff is not restricted to cattle within his county at time of the levy and sale.

3. It is evident that the levy and sale do not pass title to any particular animals, but gives only the right to select the number sold. The right of the purchaser is "to gather and pen *such stock* and select therefrom the number purchased by him."

4. The levy and sale confers the right to gather, pen, and select from the entire stock, regardless of county boundaries if necessary, the number purchased, wherever the animals may be found.

5. The officer is required to "designate by reasonable estimate the number of animals," and this measures the extent of the purchaser's right to select and hold, or in other words limits his purchase.

6. When a levy is made upon cattle running at large in the range, to be valid it must be without restriction based on county boundaries, on estimate as provided by the statute, and when thus made a sale under it will confer on the purchaser the right to gather from the entire stock, though found in a county other than that in which the levy and sale are made, a sufficient number to enable him fairly to select and appropriate the number he becomes entitled to by the sale; and a levy and sale of cattle in the range not thus made can not confer title, because not made in accordance with law.

**3. Execution Sales of Personal Property.**—Levies and sales of personal property made in some manner other than that prescribed by the statutes will be invalid, because the power of the officer is limited as to mode of exercise by these laws, made to secure for the benefit of both creditor and debtor a fair price for the thing to be sold.

**4. Same—Case in Judgment.**—In this case the levies (one levy and sale for each county of an estimated number assumed to be in each) were restricted to cattle in the respective counties where they were running. [See opinion.] The sales were made in pursuance of such levies. The same purchaser bought at all the sales. These sales did not confer title upon the purchaser.

5. **Illegal Execution Sales—Presumptions.**—In sales not made in accordance with laws the conclusive presumption is that the property did not bring such a price as if the levy and sale had been legally made.

6. **Sale of Mortgaged Property.**—Personal property in possession of a trustee to secure a lien may be levied upon and sold under the statute; levy made by giving notice to the person in possession; the purchaser being entitled to the possession upon complying with the conditions of the pledge. Rev. Stats., arts. 2292, 2296, 2313.

7. **Same.**—It seems that a purchaser under a levy and sale of cattle in the range could not acquire possession until he should satisfy the mortgage under which the cattle were held by a trustee at time of the levy.

APPEAL from Tarrant. Tried below before Hon. R. P. WILLING, Special District Judge.

The opinion states the case.

*Templeton & Carter* and *Robertson & Coke,* for appellants.—1. A purchaser at execution sale acquires no title by his purchase to property not levied upon nor attempted to be sold.

2. A sheriff in the execution of civil process has no jurisdiction beyond the limits of his county. Rev. Stats., title 34, "Execution;" Shafer v. Hayne, 35 N. W. Rep., 928; Freem. on Ex., sec. 104.

3. A valid range levy can not be made upon cattle inclosed in a pasture. Rev. Stats., arts. 2293, 2314, 4564, 4592.

4. A valid range levy can not be made upon cattle when the defendant in execution has neither possession nor right of possession. In such case the constructive levy by notice is the only levy authorized by law. Middlebrook v. Zapp, 73 Texas, 29.

5. The appellee's purchases at execution sales were void for uncertainty. 2 Greenl. on Ev., sec. 638; Benj. on Sales, p. 228, and chap. 4, book 2, p. 257, 2 ed.; Pratt v. Brown, 4 Wis., 519; Cool. on Torts, p. 442; 1 Waterm. on Tres., sec. 408; Jones on Chat. Mort., sec. 56.

6. A purchaser at execution sale of cattle running upon a range acquires no title until he obtains and has recorded a bill of sale. Rev. Stats., art. 4564; Black v. Vaughn, 70 Texas, 47.

*C. C. Potter, J. H. Cobb,* and *Crawford & Crawford,* for appellee.—1. In reply to appellants' first assignment of error, appellee says the court did not err in instructing the jury that the judgments, executions, levies, and sheriff's sales were sufficient in law to pass to appellee all the title and interest which the Stone Cattle and Pasture Company had in and to the cattle in controversy situated in Archer, Wichita, and Baylor counties at the date of said sale.

2. The court charged the jury, that "should it appear that some of the cattle were not in said counties at the date of said sale, then as to these cattle the plaintiff could acquire no title by his purchase." The only evidence upon the subject was the returns upon the executions.

The jury could not have understood from the charge that the sales were all made on the same day, and it is not perceived how appellants could have been prejudiced even had the jury so construed the charge.

3. The correctness of appellants' second proposition, "that a sheriff in the execution of civil process has no jurisdiction beyond the limits of his county," as a general rule may be conceded; it has no application to this case. In the case from Wisconsin, cited by appellants, the statutory provision under which the levy was made is not quoted. The return upon the attachment shows affirmatively that the sheriff of one county levied upon logs then situated in another county. Shafer v. Hayne, 70 Wis., 393.

4. Appellants' third proposition, that "a valid range levy can not be made upon cattle inclosed in a pasture, has been fully answered in the description of the pasture and the statement of the labors of and expenses incurred by the receivers in gathering and herding the cattle heretofore made. Whether or not the conditions which authorize a range levy exist must be determined by the sheriff at the time, and his action can not be collaterally attacked. In Commonwealth v. Dow, 10 Metcalf, 384, a dog, not being confined and following his master through the streets at a distance of two or three rods from him, was held to be at large within the meaning of a law prohibiting dogs from running at large. The dog was usually under the control of his master and obedient to his call.

5. Appellants' fourth proposition, "that a valid range levy can not be made upon cattle when the defendant in execution has neither possession nor right of possession," is not tenable. That an execution may be levied upon property which the debtor has pledged to another is not an open question in this court. Osborn v. Koenigheim, 57 Texas, 94.

6. Appellants' fifth proposition, "that appellee's purchases at execution sales were void for uncertainty," is without force. By his purchase appellee acquired not only the title to the number of cattle sold, but the right to select the number from the herd. Rev. Stats., art. 2314. In Brown v. Pratt, 4 Wisconsin, 519, the facts are analogous to the facts in this case, but the law governing the levies in the two cases is quite different. There the court say: "In order to constitute a valid levy, the sheriff must be in view of the property and have it under his control." It would seem that our statute was enacted to obviate the very difficulties pointed out in Brown v. Pratt, and suggested by this court in the case of Portis v. Parker, 8 Texas, 26, discussing a range levy.

7. Appellants' sixth proposition, "that a purchaser at execution sale of cattle running upon a range acquires no title until he obtains and has recorded a bill of sale," can not be maintained. The making of a deed by the sheriff is but a ministerial act, and if the judgment and

execution be valid the deed may be omitted.  Flemming v. Powell, 2 Texas, 230; Leland v. Wilson, 34 Texas, 91; Freem. on Ex., 2 ed., sec. 324.

Article 4564 of the Revised Statutes refers to voluntary transfers, and not judicial sales.

8.  A range levy is valid, and places the property in custodia legis. Rice v. Miller, 70 Texas, 613; Court v. O'Connor, 65 Texas, 338.

STAYTON, CHIEF JUSTICE.—The right of appellee to any of the relief he sought or obtained depends upon his title to cattle at one time owned by the Stone Cattle and Pasture Company, and in the view taken of the case it does not become necessary to state the facts bearing upon other questions raised by the parties, nor to discuss them.  That the cattle at one time belonged to the Stone Cattle and Pasture Company both parties concede, for they claim from this common source.

Appellee claims that he obtained title to the cattle through sales made under executions against that company, and there is no claim that the judgments were not valid nor that the executions were in any manner defective, but it is claimed that the levies and sales made were invalid, and that appellee acquired no title by his purchase under them.

The facts affecting the sales under execution are in substance as follows:  The Stone Cattle and Pasture Company owned an inclosed pasture estimated to contain not less than 293,000 acres of land, but some of the witnesses gave its area at about 430,000 acres, and this covered lands in Wilbarger, Archer, Baylor, and Wichita counties, over which the cattle in controversy and other cattle ranged at will without obstructions, artificial or natural; and the evidence shows that it was impossible to ascertain what cattle or number of cattle were in either of these counties at the time the levies and sales in question were made. There were roads running through the pasture, some of which passed through gates, and there was one first-class road, across which there were no gates, but at each of the openings in the pasture fence thus made a man with his family lived, whose duty it was to guard the openings.

The cattle in controversy and many others, at the time the levies and sales relied on by appellee for title were made, ran at large in that pasture, but the company had executed a deed of trust on the cattle in controversy, which were identified by a particular brand which other cattle in the pasture did not bear; and of these cattle the trustee had the possession or right to possession and control as they ran or otherwise at the time the levies and sales were made, unless appellants had acquired this.

The cattle being so situated, an execution issued on one of the judgments against the Stone Cattle and Pasture Company, which, on March

27, 1886, was in the hands of the sheriff of Wichita County, to whom it was directed, and on that day he showed by his return that he levied or attempted to levy on some of the cattle in controversy. His return, which it is conceded shows what he did, after stating that he was unable to find any person from whom to demand a levy, reads as follows: "I did, in the presence of two good and credible witnesses, to-wit, W. E. Johnson and H. Burnham, levy upon and take into possession, as they ran upon the range in Wichita County, Texas, the following described stock cattle: a certain lot of mixed stock cattle, some branded T some ⌡⌡⌡, some ⌡⌡⌡⌡, some XOZ, nearly all those branded ⌡⌡⌡, ⌡⌡⌡⌡, and XOZ having the T brand on them also; and all of them having a ＼ on the left loin; numbering 3000 head, and being all the cattle in said brand in Wichita County." These cattle were sold by the sheriff, April 10, 1886, and appellee became the purchaser at a bid of $100, but the cattle were never gathered or in any manner severed from other cattle in the pasture, but were sold as they ran.

Another execution issued against the company, directed to the sheriff of Archer County, was in the hands of that officer on March 30, 1886, and his return thereon, so far as necessary to be stated, is as follows: "I did * * * levy upon and take into my possession, as they ran upon the range in the pasture of the Stone Cattle and Pasture Company, in Archer County, 5700 head of mixed stock cattle branded T, and some branded ⌡⌡⌡ or ⌡⌡⌡⌡, and some branded XOZ, nearly all of which branded cattle also have the T brand on them, and 4000 head of which have been rebranded thus ＼ on the left loin."

These cattle were sold by the sheriff, and appellee became the purchaser.

This sale was made under the same circumstances as the sale before referred to, and the appellee bid for the 4000 head having the rebrand, thus ＼, the sum of $60. This rebrand designates the cattle covered by the trust deed, which are the cattle in controversy, and this brand was placed on cattle for the purpose of identifying those covered by that instrument some time before the levies were made.

Another execution against the company was directed to the sheriff of Baylor County, and his return shows that on April 12, 1886, he levied "upon cattle on the range, by range levy, to-wit, upon 5500 head of mixed stock cattle, consisting of cows, calves, yearlings, two year old steers and heifers, bulls, and beef steers, in various marks and brands, but nearly all being branded thus T on left hip and side, and those not so branded having ⌡⌡⌡⌡ or ⌡⌡⌡ or XOZ on left side, and all of said cattle being also tally-branded as follows: 4000 head branded ＼ on left loin."

The return then states the brands on the 1500 head not having the brand ＼ on loin, which is termed a "tally-brand," and it contains the statement that the cattle thus levied upon were "all the cattle in Bay-

lor County branded with any one of said tally-brands." These cattle were sold under the same circumstances as those before referred to, and of the 4000 bearing the tally-brand ⟍, appellee became the purchaser at a bid of $60.

The evidence shows, outside of the officers' returns, that the levies were entered on the several executions while the cattle were running at will in the pasture, and that the sales were made while they were in the same condition; and it further shows, that it would be impossible to ascertain what particular cattle or number of the cattle in controversy were in any given county at any particular day.

The question of the admissibility of the sheriff's acts for the purpose of showing title in appellee was raised in the court below, as was the question of its sufficiency, but all these were overruled, and the court instructed the jury as follows:

"You are instructed, first, that the judgments, executions, levies, and sheriff sales read to you in evidence by the plaintiff are sufficient in law to pass all the title and interest the Stone Cattle and Pasture Company had in and to the cattle in controversy situated in the counties of Wichita, Archer, and Baylor at the date of said sales to plaintiff W. E. Cobb; but should it appear that some of the cattle in controversy were not in said counties at the date of said sale, then as to those cattle the plaintiff could acquire no title by said purchase."

A contrary charge was requested and refused.

It is ordinarily necessary to the validity of a levy upon personal property that the officer take such possession and control of the thing levied upon as the nature of the thing renders practicable, and the reasons why this must be done have been too often stated to require repetition. It is also ordinarily necessary that such property should be at the place of sale and subject to inspection by all persons who may desire to purchase, and it is now unnecessary to enter into a statement of the reasons on which these rules are founded. Their observance tends to prevent the sacrifice of property, to insure good faith and fair dealing, and avoids a multitude of ills which almost necessarily follow their nonobservance. It has, however, been found that to enforce these rules as to some kinds of personal property will work a greater injury to both debtor and creditor in some cases than will their non-enforcement, and in such cases legislatures have enacted laws under which personal property may be levied upon and sold and thereby title pass without their observance; and it is claimed that a statute exists in this State which gives validity to the levies and sales through which appellee claims.

The statute provides, that "A levy upon horses, mules, jacks, jennets, horned cattle, or hogs running at large in a range, and which can not be herded and penned without great inconvenience and expense, may be made by designating by reasonable estimate the number of animals

and describing them by their marks and brands, or either; such levy shall be made in the presence of two or more credible persons, and notice thereof shall be given in writing to the owner, or his herder or agent, if residing within the county and known to the officer." Rev. Stats., art. 2293.

The statute further provides, "When a levy is made upon horses, mules, jacks, jennets, horned cattle, or hogs running at large in the range, under article 2293 of this chapter, it is not necessary that such stock or any part thereof should be present at place of sale, and the purchaser at such sale is authorized to gather and pen such stock and select therefrom the number purchased by him." Rev. Stats., art. 2314.

It is urged, that as the cattle were in an inclosure, such a levy as is contemplated by article 2293 was not authorized; but looking to the reasons for the passage of the act, suggested in the face of the statute, we are of opinion that cattle situated as were those in controversy were, within the meaning of the law, "running at large in a range." The purpose of the statute was to avoid such inconvenience and expense as would be incurred in gathering and taking care of stock scattered and accustomed to run free; and this would be as great in most cases where stock ranged over as great an area as was embraced in the company's pasture as though they were not in an inclosure. The expense of gathering stock under such circumstances would be but little diminished because they were in such a pasture, and the cost of herding or otherwise keeping securely would be as great in the one case as in the other.

The statute in question was doubtless enacted in view of the well known fact that it was customary for stock owners to permit them to graze at will, even upon the uninclosed lands of others, and often to range in several counties; and in view of the further fact that inclosed pastures often extended to two or more counties; and we concur with counsel for appellee in holding that in making a levy and sale under article 2293 the sheriff was not restricted to such animals as were within his county at time of levy and sale, as are such officers in case levy is made by actual seizure. This view is strengthened by the provisions of the statute, and necessarily follows in view of the manner in which the levy is directed to be made and of the effect to be given to the sale.

It is evident from the statute that the act of sale does not pass title to any particular animals, but gives only the right to select the number sold; and until this is done the purchaser's title does not attach to any animals. The right of the purchaser is "to gather and pen *such stock* and select therefrom the number purchased by him," and as used in this connection the words "such stock" must mean nothing less than all the animals of the kind levied upon in the mark or brand given in the return of the levy belonging to the defendant against whom the execution issues, or such number thereof as will enable the purchaser

to make therefrom a selection of the number to which by the sale he becomes entitled; and the statute places no limitation on the right of the purchaser to gather and pen based on county boundaries, and it would be inconsistent to hold that a purchaser through such a sale could acquire the right to title to property which the sheriff had neither the power to levy upon nor to sell. The levy and sale must confer the right to gather, pen, and select from the entire stock, if necessary, the number purchased, wherever the animals may be found, or the purchaser's right to the number bought may be defeated, although defendant in execution may own, in the brand or mark given, ample stock to enable him to do this. Such a gathering of stock would make an interference with the property of another inadmissible, unless the right so to do is conferred by the statute; and that such a right could exist in the purchaser by reason of his purchase, when the officer would have no power to levy upon an entire stock if some of them were in another county, is inconceivable. The officer is required to "designate by reasonable estimate the number of animals," and this measures the extent of the purchaser's right to select and hold, or, in other words, limits his purchase. The estimate necessary must be based on the number of animals deemed by the officer of sufficient value to satisfy the execution, if from the best information he can obtain there be so many in the stock, and if there be not so many, then upon what he believes to exist.

The shifting condition of cattle running at large in several counties, as were those of the company, is such that an officer can not know how many animals of a given stock are in his county on the day he levies or on the day he sells, nor can he ordinarily acquire reasonably accurate information on this subject, although he may be able to acquire information reasonably accurate as to the number of animals belonging to one person in a given mark or brand on which to base such an estimate as he must make when he levies; and a person desiring to purchase will ordinarily have no better means of forming an estimate than had the officer. Such levies and sales are only justified by necessity; and in most cases, even if the purchaser knows that he will be entitled to select from the entire stock, wherever found, the number he becomes entitled to gather, select, and hold will result in the sacrifice of property; but if the purchaser is only entitled to gather, select from, and hold cattle in the county where and when the levy or sale is made, the uncertainty as to what he will get is so great that no one would bid a reasonable price.

An insuperable objection to a construction of the statute which would limit the levy and sale to cattle at the time in the county would be found in the impossibility to identify the cattle sold, or cattle from which selection would have to be made, with the cattle levied upon, or the cattle gathered from which to select, with the cattle levied upon or

sold   As shown in this case, identification would be impossible, and for this reason the statute does not require it further than that the stock from which the estimated number may be taken must be identified, and from this the purchaser may make his selection.   Under the three executions sent to different counties, levied as they were, if different persons had purchased at each sale, how could they determine as between themselves what cattle each might gather and select from? This would be impossible, and the fact that one person may have purchased at each sale can not affect the question, for the validity of a levy or sale must depend upon its compliance with the law, and can not be made to depend on who the purchaser is.   If, however, the levy and sale gives the right to gather and select from the entire stock · described in the levy, then no such difficulties would arise, and the rights of purchasers would be determined by priority in point of time of the several levies.

In view of the considerations named, and of others that might be mentioned, we hold that the statutes in question require when a levy is made on cattle running at large on the range, that to be valid it must be without restriction based on county boundaries, on estimate as provided by the statute; and that when thus made a sale under it will confer on the purchaser the right to gather from the entire stock, though found in a county other than that in which the levy and sale are made, a sufficient number of animals to enable him fairly to select and appropriate the number he becomes entitled to by the sale; and a levy and sale not thus made can not confer title, because not made in accordance with law

The law requires that a levy upon personal property shall be made by taking possession thereof when the defendant in execution is entitled to possession.   Rev. Stats., art. 2292.   What will constitute such possession as the law requires depends largely on the situation and character of the property.   The statute further declares, that "personal property shall not be sold unless the same be present and subject to the view of those attending the sale, when it is susceptible of being thus exhibited, except shares of stock in joint stock or incorporated companies;" and levies or sales made in some manner other than that prescribed by statute will be invalid, because the power of the officer is limited as to mode of exercise by those laws made to secure for the benefit of both creditor and debtor a fair price for the thing to be sold.

Execution sales are involuntary, and to give validity to them there must be a substantial compliance with the law, and in the absence of this inquiries will not be made whether the property brought as much as it would had the law been complied with; nor can equitable considerations be invoked to give validity to such sales when not made as the law requires, unless they be such as will, on the ground of estoppel, prevent parties from questioning their validity.

If, in accordance with the statutes authorizing range levies and sales, the levies and sales on which appellee relies for title had been made, then he would have acquired the right which such sales give, as would a purchaser acquire title to personal property when seized, exhibited to bidders, and sold in compliance with law; but a failure to comply with the law in the one case is as fatal to the acquisition of right or title as it is in the other.

In the case before us the levies were restricted to cattle in the respective counties where made, the sales were made in pursuance of the levies, and as these could not confer on purchasers rights such as valid levies and sales would have given, appellee can not be held to have secured this or any lesser right in or to the cattle in controversy by the sales.  In such sales not made in accordance with law, the conclusive presumption is that the property did not bring such a price as it would had the law been complied with, and therefore no inquiry will be made on that subject, and the sales must be held invalid.

The charge of the court informed the jury that the levies and sales were sufficient to confer title on appellee to all the cattle in the counties in which sales were made at the time these occurred, but in effect informed them that title to cattle not thus situated at the time would not pass.

This charge was erroneous, because such was not the effect of the sales, for the reasons before given; and if this were not true, was further erroneous, because there was no evidence from which the jury could ascertain what or how many cattle were in either of the counties when the several sales were made, and the charge was but an invitation to the jury to find a verdict without evidence upon which to base it.

It is claimed that the levies and sales were invalid, for the further reason that the cattle in controversy, at the time the levies and sales were made, were in possession and actual control of the trustee, who, under the terms of the trust deed, was entitled to the exclusive possession, and that for this reason a range levy could not be legally made.  In such cases the statute provides that levy shall be made by giving notice thereof to the person entitled to the possession, and without seizure, that the sale may be made without the presence or delivery of the property, and that the purchaser shall be entitled to the possession on complying with the condition of the pledge, assignment, or mortgage.  Rev. Stats., arts. 2292, 2296, 2313.

It is evident that a purchaser under a range levy made as the statute requires, on property held as that in controversy seems to have been by the trustee, could not acquire the right which a purchaser under a valid range levy does, unless he should first satisfy the mortgage; but we deem it unnecessary to determine whether the fact that defendant in execution was not entitled to the possession of the cattle at the times

the levies and sales through which appellee claims were made would invalidate the sales if otherwise valid.

The questions considered are decisive of this appeal, and it is not necessary to consider the many other questions presented by the assignments of error.

On account of the rulings noticed, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*