## DONALD & COBB v. J. C. CARPENTER ET AL.
### No. 1333.

1. **Evidence—Opinion.**—Statements of a witness that certain cattle, upon which a range levy of an attachment had been made, were allowed to run at large not cared for, being neglected, and owners not allowed to handle and attend to them, and that the loss therefrom was 10 per cent, are matters of conclusion rather than facts, and inadmissible.

2. **Attachment—Range Levy on Live Stock—Owner's Rights.**—Where a range levy upon live stock is made under article 2293 of the Revised Statutes, the officer is not required to herd and pen the stock, charging costs therefor; but for the purpose of feeding, branding, and caring for his herd upon the range, the owner is still left in control, and for his negligence in this regard neither the officer nor the plaintiff in the attachment would be liable.

3. **Same—Void Writ—Effect of Levy.**—The mere entry of a levy upon a writ void for want of jurisdiction in the court that issued it, will not place the property in custodia legis, nor ordinarily create liability.

4. **Same—Levy on Partnership Property.**—A levy upon the interest of one partner in the partnership property does not deprive the other partners of their possession and control, and the purchaser at a sale under such levy acquires only the right to demand an accounting.

5. **Same—Charge of Court—Extent of Recovery.**—In an action for damages resulting from a range levy of attachment on cattle, a charge that defendants are liable for cattle lost, strayed, stolen, or perishing from neglect "or otherwise," was error, in not confining the recovery to damages caused by the wrongful acts of the defendants.

6. **Same—Excessive Verdict—Remittitur.**—Where the damages are not, under the evidence, susceptible of any clear estimate, and the charge of court submits a wrong measure for their computation, the error, it seems, will not be cured by a remittitur of a part of the damages recovered.

APPEAL from Wise.    Tried below before Hon. W. D. HARRIS.

*J. Y. Hogsett,* for appellants.—1.   The court erred in not setting aside the verdict and granting a new trial on the motion of defendants, instead of permitting a remittitur and overruling the motion.    Kaufman & Runge v. Armstrong, 74 Texas, 67; Railway v. Wilkes, 68 Texas, 617; Thomas v. Womack, 13 Texas, 580; Heidenheimer v. Schlett, 63 Texas, 395.

2.   If all that the sheriff did by virtue of the writ was to indorse the written levy upon it and return it to the court from which it issued, and he did not by virtue of it deprive the plaintiffs in this suit of their possession, management, or control of the cattle upon which the writ purports to be levied, then there should have been a verdict for the defendants.    Railway v. Underwood, 64 Texas, 467, 468; Tel. Co. v. Andrews, 78 Texas, 305.

3.   The range levy without seizure did not disturb the title of plaintiffs in their property, nor their possession therein, and the defendants in this case are not liable for any acts of the sheriff concerning the property that were neither authorized, directed, nor ratified by them. Trawick v. Martin-Brown Co., 79 Texas, 460; Drake on Attach., secs.

194, 196, 196b; Rice v. Miller, 70 Texas, 613; Gunter & Summerfield v. Cobb, 82 Texas, 598.

4. If the attachment was void and the levy void, and no actual seizure of the property had taken place, but simply the entry of a range levy on the writ, the same did not affect the title or possession of the property, and to decline to have said void levy released would constitute no cause of action. Rice v. Miller, 70 Texas, 613; Trawick v. Martin-Brown Co., 79 Texas, 460; Frieberg v. Johnson, 71 Texas, 558; Gunter & Summerfield v. Cobb, 82 Texas, 598.

5. The charge is erroneous, in that it instructs the jury to find for the value of all cattle that may have perished from neglect or otherwise, which should include all that perished from old age, from inclemency of weather—whether neglected or not—from depredations of wild animals, and from every cause whatever, whether caused by the levy or not. Tel. Co. v. Kendzora, 77 Texas, 257; Cook v. Dennis, 61 Texas, 246.

6. The simple entry of the range levy upon the writ, subject to other writs, could occasion no damage, and this proposition was not embodied in any charge given. Trawick v. Martin-Brown Co., 79 Texas, 460; Freiberg v. Johnson, 71 Texas, 558; Tel. Co. v. Andrews, 78 Texas, 305; Drake on Attach., secs. 196b, 269; Murfree on Sheriffs, sec. 977.

*T. J. McMurray*, for appellees.—1. The actor in procuring the writ is responsible for all damage done by it, whether it be void or voidable. All who participate in the procuring and levying of said writ are trespassers, and liable to the injured parties for damages. Mississippi Mills v. Meyer & Co., 83 Texas, 433.

2. After a careful and patient reading of the assignments of error and the charge complained of, we conclude that the charge as applied to the pleadings and evidence is an admirable exposition of the law of the case, and are willing that the court pass upon it without us citing authority or argument.

HEAD, Associate Justice.—Appellees instituted this suit against appellants to recover damages alleged to have resulted from the levy of an attachment against Carpenter individually upon the partnership cattle of Carpenter, Haskell & Mahaffey. The officer attempted to make what is commonly known as a range levy, but his return fails to show that written notice was given the owner or his agent, or any reason why this was not done. Appellees claim, however, that the sheriff took actual charge of the cattle by direction of appellants.

Upon the trial in the court below, appellees were allowed to introduce, over the objection of appellants, the following answer from the deposition of the witness Crumpton, to wit: "The cattle were allowed to run at large not cared for, being neglected; and owners not allowed to work and attend to the cattle and brand the increase, the stock is

damaged and owners injured; the sheriff exercised control and threatened to sell; the loss is 10 per cent by running at large and not being cared for, and owners not being allowed to handle them."

In this we think there was error. The witness should have been restricted to a statement of the facts, leaving it to the jury to draw the proper conclusions therefrom, under the charge, as to what would constitute loss, injury, and damage to the cattle for which appellants would be liable. Railway v. Wesch, 85 Texas, 598; Railway v. Wright, 1 Texas Civ. App., 402.

Appellees, to establish the liability of appellants, rely both upon the legal effect of the range levy and upon the actual control of the cattle alleged to have been taken by the sheriff thereunder, and we have concluded that, inasmuch as the judgment must be reversed, we can better subserve the purposes of another trial by giving our views upon these questions than by discussing the assignments of error seriatim.

First, then, to what extent does a range levy upon cattle, made in compliance with the statute, render the officer, and through him the plaintiff in attachment, liable for the damage resulting from straying, theft, and death for want of attention (these being the items of damage charged in the petition) during the existence of the levy?

The statutes authorizing this kind of levy are as follows:

"A levy upon horses, mules, jacks, jennets, horned cattle, or hogs, running at large in a range, and which can not be herded and penned without great inconvenience and expense, may be made by designating by reasonable estimate the number of animals and describing them by their marks and brands, or either; such levy shall be made in the presence of two or more credible persons; and notice thereof shall be given in writing to the owner, or his herder or agent, if residing within the county and known to the officer." Rev. Stats., art. 2293.

"When a levy is made * * * under article 2293 of this chapter, it is not necessary that such stock or any part thereof should be present at the place of sale, and the purchaser at such sale is authorized to gather and pen such stock, and select therefrom the number purchased by him." Rev. Stats., art. 2314.

We think it clear that the owner would not be authorized to remove the cattle from the range during the existence of such a levy, and the officer would have the right, and it would be his duty, to prevent him from doing so, should he make the attempt. Rice v. Miller, 70 Texas, 615. It also seems clear to us that the officer ordinarily would not have the right, nor be required, to herd and pen the stock, and charge therefor in his bill of costs, for the inconvenience and expense of doing this is the very reason given for the enactment of the statute. Also, it will be observed that a levy of this kind may be made upon a very small number out of a very large herd (Gunter v. Cobb, 82 Texas, 598); and it could hardly have been intended that, under such circumstances, the officer would be expected to take charge of the entire herd, and charge the losing party with the expense of caring for them. It

also would be unreasonable to suppose the Legislature intended that, by a levy of this kind, the owner should be deprived of the right to herd, pen, feed, and look after the cattle, and at the same time the officer should not be authorized to do so; in other words, that during the existence of such a levy, the stock should be permitted to run at large uncontrolled by any one.

We therefore construe the statute to mean this: by a range levy the entire herd is placed in custodia legis, so as to prevent the owner from selling or otherwise disposing of any part thereof in such manner as will interfere with the right of selection given the purchaser by article 2314; and it is the duty of the officer to exercise such supervision as may be necessary to see that this is not done. Should the owner sustain damage from being deprived of such right of disposition of his property, he can, in a proper case, recover therefor. But for the purpose of feeding, branding, and caring for his herd upon the range, the owner is still left in control; and for his own neglect, neither the officer nor the plaintiff in attachment would be liable.

Of course, what is here said would have no application in case the officer should go further than the law authorizes, as above construed, and take actual possession of the stock and exclude the owner from the control and management thereof.

We have thus far treated the case as though the attachment had been against all the owners of the property, while it may be observed that it was in fact only against Carpenter, one of the partners.

An ordinary levy upon the interest of a partner in partnership property is made by leaving a notice with one or more of the partners, or with a clerk of the partnership. Rev. Stats., art. 2295. Under such a levy, the officer does not take actual possession, and the purchaser only acquires the right to require an accounting. If, then, an ordinary levy upon the interest of a partner by giving notice would not render the officer and attaching plaintiff liable for a conversion, can it be said that a range levy made in the same way would have this effect? In other words, does a range levy upon partnership cattle for the debt of one of the partners have the effect of depriving the other partners of their possession and control?

We think not, and that in such case the purchaser, at most, will only acquire the right to call for an accounting with the partners against whom the writ did not run. An ordinary seizure and sale of the personal property of one for the debt of another does not deprive the real owner of his title thereto, should he see proper to assert it (2 Freeman on Executions, section 335); nor did a levy and sale by taking actual possession of partnership property under a writ against one of the members, as was the practice previous to the adoption of our Revised Statutes, having the effect of depriving the other partners of their interests.

In this case, the appellees do not sue for a conversion of their cattle, but only for special damages alleged to have been sustained by

their being deprived of the possession and control of them; and we are of the opinion that an ordinary range levy of a writ against one of the partners would not have this effect as against the others, and that appellee's case must be made to depend upon whether or not they were, by the acts of the officer, in fact deprived of such rights.

If the officer acting under this writ, by the direction of the appellants, took actual charge of the cattle, or prohibited appellees from looking after them, and during this time some of them, through his negligence, were lost by straying, being stolen, or dying from want of proper attention, all parties thus acting together would, of course, be liable for the resulting damage.

The point is also made, that inasmuch as the court from which the attachment was issued was without jurisdiction of the case, the writ was void, and consequently an attempted levy thereof in compliance with the statutes above quoted would not place the property in custodia legis. This position seems to us to be sound, and presents an additional reason why appellees' case is dependent upon the acts done by the parties, in addition to the mere office indorsement of the attempted levy upon the writ. The mere entry of such a levy upon a void writ would not ordinarily create liability.

The latter part of the third paragraph of the court's charge to the jury was as follows: "And if you further believe from the evidence, that during said time between October 7, 1887, and February 16, 1888, any of the cattle included in the said levy were lost, from straying off, being stolen, or perishing from neglect, or otherwise, then it will be your duty to find for the plaintiffs actual damages against the defendants, and assess the same at a sum equal to the market value of the cattle embraced in said levy, and so lost during said time," etc.

The use of the word "otherwise" in this charge was erroneous, and especially injurious under the allegations and evidence in this case. In their petition, appellees only claimed damage for the loss of 500 head of cattle, 300 of which are alleged to have strayed, 150 to have been stolen, and 50 to have perished for lack of proper care; and consequently they were not entitled to recover for losses sustained in any other way. The evidence was exceedingly meager, if indeed it furnished any data at all by which the jury would have been enabled to say what number of the cattle had strayed, how many had been stolen, which ones, if any, had died from neglect, or which ones had been lost from other causes not named in the petition; and had they not been instructed to find for plaintiffs all losses occurring during the named time, regardless of how caused, their verdict might have been quite different. Not only was this charge erroneous in allowing a recovery for losses not claimed by appellees, but it was also erroneous in not confining appellees to the damage caused by the wrongful acts of appellants or the sheriff.

In Girard v. Moore, 86 Texas, 676, the law upon this subject is tersely stated, as follows: "The loss for which a recovery may be had in an

action against a wrongdoer must be the result of the wrong inflicted. In order to recover damages, the party complaining must show not only that he has suffered the loss, but also that it would not have been incurred but for the wrongful act of his adversary."

This principle has peculiar application to the facts of this case. When we read the evidence, it is impossible to see upon what ground the jury could have based a finding for $2000 actual damages, except upon the idea that the sheriff, and appellants through him, were insurers of these cattle during the continuance of the levy, and would be liable for losses resulting even from natural causes. So manifestly excessive was the verdict, when measured by the law applicable to the evidence, that appellees themselves felt constrained to promptly enter a remittitur of $500. We are therefore of opinion that, in view of the probable influence the giving of this charge had upon the verdict, it would of itself necessitate a reversal of the judgment, and that the entering of the remittitur, under the circumstances, will not cure the error. Railway v. Wesch, supra.

We find no error in the action of the court in overruling the exceptions of appellants to appellees' petition. It is not claimed that Haskell and Mahaffey could recover exemplary damage for the malice of appellant against Carpenter, but they relied upon the invalidity of the writ as well as the levy, and they had a right to allege as many defects as they could prove, and could not be restricted to one, even though they could thereby make a perfect case. Besides, no exemplary damages were allowed, and even if the court erred in this ruling, it would not require a reversal.

In view of another trial, the evidence will not be discussed.

The judgment of the court below will be reversed, and the cause remanded for a new trial.

*Reversed and remanded.*

Delivered October 10, 1894.