WAGNER et ux. v. HUDLER.    (No. 6325.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 25, 1920. On Motion for Rehearing, March 31, 1920.)

1. EXECUTION ⊗⟶251(2) — IRREGULARITIES HELD TO JUSTIFY SETTING ASIDE OF SALE FOR INADEQUATE PRICE.

Execution sale of property worth $3,000 and subject to taxes amounting to $264 for $625 will be set aside, where the order of sale was for the full amount of the judgment with costs, though the amount had been reduced by payments, and the order of sale issued in the name of the original judgment creditor, though an assignment was shown on the margin of the judgment.

2. EXECUTION ⊗⟶256(2)—PURCHASER'S BELIEF AS TO AMOUNT OF TAXES IMMATERIAL IN DETERMINING ADEQUACY OF BID.

That the purchaser of property at an execution sale thought the back taxes amounted to more than they did was immaterial, in a suit to set aside the sale, in determining whether the property was sacrificed for an inadequate sum.

3. EXECUTION ⊗⟶245—NEGLIGENCE OF HUSBAND NOT GROUND FOR REFUSING TO SET ASIDE SALE OF HOMESTEAD WHERE WIFE NOT NEGLIGENT.

Where an owner of property sold under execution presented to the sheriff a note from the judgment creditor and asked that the sale be stopped, and was told that the sale could only be stopped by the judgment creditor's attorney and that the sale would be had at 11 o'clock unless the attorney stopped it, the owner's negligence in failing to notify the attorney of the sheriff's intention to sell did not prevent the setting aside of the sale, where the property was the homestead and the wife had been given notice of the sale and the deed undertook to convey her interest, as her rights could not be affected by her husband's acts.

4. EXECUTION ⊗⟶244 — JUDGMENT CREDITOR ENTITLED TO HAVE IRREGULAR SALE FOR INADEQUATE PRICE SET ASIDE.

A judgment creditor was entitled to have an execution sale for an inadequate price set aside for defects and irregularities, where her attorney had told the sheriff that he would be present, but the sheriff, knowing that an effort to settle was being made, and without ascertaining why the attorney failed to appear, sold the property during a heavy rain within a few minutes after the hour fixed for the sale, and where the attorney promptly protested before the purchaser had paid the money or a deed had been made.

5. EXECUTION ⊗⟶221—SALE MAY BE MADE AT ANY TIME WITHIN THE HOUR STATED IN NOTICE.

An execution sale may be made at any time between 11 and 12 o'clock under a notice that it will be made at 11 o'clock.

6. EXECUTION ⊗⟶226 — IN CONDUCTING SALE SHERIFF IS AGENT OF BOTH PARTIES AND UNDER DUTY TO SECURE BEST RESULTS.

The sheriff in selling property under execution is merely the agent of the creditor and debtor, and it is his duty to secure the best results for both.

On Motion for Rehearing.

7. EXECUTION ⊗⟶256(1)—RENTS NOT RECOVERABLE IN SUIT TO SET ASIDE SALE WITHOUT EVIDENCE FIXING AMOUNT.

In a suit to set aside an execution sale, the rents for the time intervening between the date the purchaser took possession and the date of the trial cannot be recovered, where the evidence is of such uncertain character as to furnish no basis for fixing the amount.

8. APPEAL AND ERROR ⊗⟶1116—RENTS ACCRUING AFTER TRIAL OF SUIT TO SET ASIDE EXECUTION SALE CANNOT BE AWARDED BY APPELLATE COURT.

Rents accruing after trial of a suit to set aside an execution sale, which was set aside on appeal, must be demanded in a separate suit and cannot be awarded by the appellate court.

9. EXECUTION ⊗⟶256(1) — IN SUIT TO SET ASIDE SALE, COURT MAY REQUIRE SHERIFF TO PAY MONEY INTO COURT.

In a suit to set aside an execution sale, the court could have required the sheriff to pay the money collected by him under execution into the registry of the court.

10. JUDGMENT ⊗⟶243—CANNOT BE RENDERED AGAINST SHERIFF WHERE HE IS NOT PARTY.

In a suit to set aside an execution sale, judgment could not be rendered requiring the sheriff to repay the money in his hands to the execution debtor, where he was not a party to the suit.

Appeal from District Court, Victoria County; John M. Green, Judge.

Suit by P. F. Wagner and wife against L. O. Hudler, in which Miss M. E. Cooley intervened. From a judgment in favor of defendant, plaintiffs and the intervener appeal. Reversed and rendered.

C. C. Carsner, J. L. Dupree, and Fly & Ragsdale, all of Victoria, for appellants.

R. L. Daniel and J. J. Woodhouse, both of Victoria, for appellee.

MOURSUND, J. P. F. Wagner and wife sued L. O. Hudler, seeking to set aside a sheriff's sale and cancel a deed made pursuant to such sale. They were the owners of the property sold. Miss M. E. Cooley, who owned the judgment upon which the order of sale issued, intervened, and also sought to set aside such sale and deed. Irregularities in the order of sale, coupled with gross inadequacy of price, and other matters and things, were relied upon, all of which will be sufficiently disclosed in the findings of fact and in our discussion of the assignments of error. From a judgment in favor of defendant, plaintiffs and intervener appealed.

In stating the facts found by the trial court, we will copy most of the findings; but those relating to value contain unnecessary

matter, and only the material portions thereof will be copied.

"Findings of Fact.

"(1) Miss M. E. Cooley, intervener, owned a judgment against defendants P. F. Wagner and wife, Leila M. Wagner. This judgment had been rendered in the district court of Victoria county at its spring term, 1910, in the suit of Joseph Fagan v. P. F. Wagner, Leila M. Wagner, and W. V. Nothnagel, and foreclosed a mortgage lien in said Fagan's favor on lot No. 4, in block No. 203, in the city of Victoria.

"(2) The said judgment was for $2,539.50 and was reduced by payment to $2,300, when on June 3, 1910, it then amounting to $2,300, same was transferred by written transfer, for value, to the present intervener by said Fagan. The costs in said suit, amounting to $13.80, were paid by said Wagner at the time of said transfer from Fagan to Miss Cooley. Said transfer was duly noted on the margin of the court minutes where said judgment was recorded.

"(3) In the year 1914 said Fagan died.

"(4) On January 13, 1919, said judgment for $2,300 was a live, valid, and subsisting judgment, and on said date the present intervener had, through her attorney, an order of sale issued thereon. No affidavit of the death of said Fagan was filed. The order of sale was issued in the name of Fagan and for the original amount of said judgment, $2,539.50, and for the costs of suit, which had been paid by the Wagners. Intervener's attorney was at said time suffering from weakened eyesight produced by influenza which he mentioned to the district clerk at the time the clerk was issuing said order of sale.

"(5) Intervener's attorney delivered said order of sale to the sheriff of Victoria county, and the sheriff made the levy. Said attorney prepared and had sent out the notices as required by law and notices were posted. About four or five days before the day of sale, intervener's attorney told the sheriff that said sale would come off and that he, said attorney, would be present.

"(6) On February 4, 1919, the day of sale, at about 9:30 o'clock a. m., P. F. Wagner appeared at the sheriff's office, called the sheriff out into the hall, and told him that he had an order stopping the sale, at the same time exhibiting to him the note in evidence from Miss Cooley. The sheriff told him that said sale could only be stopped by Mr. Carsner, attorney for Miss Cooley, and told him to so tell Mr. Carsner; that if he did not receive notice from Mr. Carsner to stop the sale it would take place at 11 o'clock that morning, and told him to so tell Mr. Carsner. Wagner went immediately to Carsner's office, but did not tell said Carsner what the sheriff had said.

"(7) A few minutes after 11 o'clock a. m., on February 4, 1919, the sheriff sold said property as commanded to do by said order of sale. At said sale there were four bids, and the property was struck off to L. O. Hudler, the defendant, for $625. At said sale there were present, besides defendant, L. O. Hudler, Hunt Stoner, Frank Polka, John Thomas, E. W. Klein, Dr. Franks, D. C. Holzheuser, and possibly one or two others. Just before the sale was closed, S. M. Bailey arrived. He had time to bid on said property after he got there. Hudler paid the amount of his bid to the sheriff, and received deed from the sheriff. At no time prior to said sale did the sheriff receive notice from intervener or her attorney not to have said sale, or to delay or postpone same. It rained almost continuously on said morning, and especially hard about 11 o'clock. During the morning of the day on which said sheriff's sale was made, the sheriff remained in his office at the courthouse from about 9:30 o'clock a. m. until the time said sale was made, and Mr. C. C. Carsner, attorney for intervener, was in his office, in Victoria, transacting business from about 10 o'clock a. m. until after 11 a. m. on said date. There were telephone connections in operation during said morning between the office of the sheriff and the office of the attorney for intervener.

"(8) There had been no agreement or understanding between the sheriff and defendant L. O. Hudler with reference to the latter bidding on said property. Neither the sheriff nor any one else knew that Hudler intended to bid on the property before the sale. * * *

"(10) I find that the reasonable market value of said property on February 4, 1919, was about $3,000. * * * At the time of the sale there was due as delinquent state, county, and city taxes on said property about $264. The Wagners had been sued on two or more occasions for delinquent taxes, and Hudler, the purchaser, knew of this, and knew there were back taxes against said property. He thought at the time of his purchase that the amount of back taxes was greater than it was."

The court's conclusion of law is as follows:

"Considering the character and condition of the property, and the tax liens on same, I find that the price paid is not so inadequate as to justify a court in setting aside said sale. There were no irregularities about said sale that tend to make same void or voidable; and judgment is rendered that plaintiff and intervener take nothing, and that defendant go hence without day and recover his costs."

[1, 2] It appears Fagan, the plaintiff in the judgment, was dead; that the judgment was owned by Miss Cooley, and this was disclosed by notation on the margin thereof referring to written transfer; that the judgment had been reduced to $2,300 and the costs paid, but, notwithstanding this, the order of sale was issued in the name of Fagan, and was for the full amount of the judgment, $2,539.-50, and for costs of suit, $13.80. It did not mention Miss Cooley, and required the officer to collect $2,539.50, together with interest thereon from May 27, 1910, at the rate of 8 per cent. per annum, and said costs of suit. The amount was excessive to the extent of $239.50 and interest thereon for nearly nine years at 8 per cent. per annum, and to the extent of certain costs. The price obtained at the sale was grossly inadequate, for the court found the premises were worth $3,000, and that the taxes against same amounted to $264, leaving the net value $2,736, while Hudler bid only $625. The fact that Hud-

ler thought the back taxes amounted to more than they did cannot affect the issue whether in fact the property was sacrificed for an inadequate sum. The irregularities above detailed were such as are calculated to keep prudent persons from bidding and to prevent the property from bringing something like its reasonable value. These irregularities are not attributable to defendants in execution. The price obtained was grossly inadequate under the finding by the court, which, in view of all the testimony, was very favorable to defendant. The defects and irregularities found in the process under consideration, coupled with gross inadequacy of price, are such as to require that the sale be set aside at the suit of the owners of the property, in the absence of conduct on their part which would be sufficient to estop them from attacking the sale. Irvin v. Ferguson, 83 Tex. 491, 18 S. W. 820; Gunter v. Cobb, 82 Tex. 606, 17 S. W. 848; White v. Taylor, 46 Tex. Civ. App. 471, 102 S. W. 747; Graham v. Cansler, 191 S. W. 856; Moore v. Miller, 155 S. W. 575.

We therefore hold that the conclusion of law filed by the trial court is erroneous.

[3] Appellee seeks to justify the judgment on grounds not relied on by the trial court. He asserts that the act of Wagner in failing to notify Carsner, the attorney of the owner of the judgment, that the sheriff intended to sell the property at 11 o'clock, was such an act of negligence as would estop him from attacking the sale. The court did not so find as a matter of fact, nor base his judgment on the law of estoppel. Nor could any act of Wagner's affect the rights of Mrs. Wagner, who is not shown to have had any notice of the sheriff's statement or to have participated in any supposed negligence. The property was the homestead, and in fact Mrs. Wagner testified it was owned by her and not by Wagner. It is true that the execution failed to mention her as one of the parties to the suit, although this is required by article 3729, R. S. 1911, as well as a correct statement of the amount due; but the sheriff gave her notice and by his deed undertook to convey her right, title, and interest in the land.

We conclude that Wagner and wife were entitled to have the sale set aside.

[4] We will now consider the case made by the owner of the judgment. Her attorney had stated to the sheriff a few days before the sale that it would come off and he would be present. On the morning of the day set for the sale, it rained almost continuously during the morning and especially hard about 11 o'clock. The sheriff knew that an effort was being made to settle the case. Without ascertaining why the attorney failed to appear, he sold the property just a few minutes after 11 o'clock, at a time when it was raining hard. The attorney was busy in his office trying to reach a settlement with Wagner, and had no notice of the statement by the sheriff to Wagner that he would sell at 11 o'clock. When a settlement had been agreed on which was shortly after 11 o'clock, and Wagner had gone to the bank for the money, the attorney telephoned the sheriff and learned that the sale had taken place. The purchaser had not paid the money nor had a deed been made. The attorney protested to the sheriff and the purchaser. Afterwards, the money was paid and a deed executed. The money remained in the hands of the sheriff. The sheriff could have telephoned the attorney and ascertained what prospect there was of the settlement being effected, but instead of doing so he sold the property during a heavy rain in the absence of the attorney and the Wagners.

[5, 6] The court did not find on the issue made by the testimony of the attorney and the sheriff with reference to whether or not the attorney said he intended to bid on the property, nor does it appear that he was requested to make an additional finding on the point. This, however, is regarded by us as immaterial, for the reason that the sheriff must have known that the purpose for which the attorney desired to be present was to protect his client's interests, which could only be accomplished by bidding on the property. The fact that the sheriff had stated to Wagner his intention of selling at 11 o'clock did not impose upon him any duty to do so. Besides, if notice has been given that a sale is to be at 11, it may be made any time between 11 and 12. Freeman on Executions, § 287. We are unable to reconcile the sheriff's actions with our conception of his duty under the circumstances, it being well established that he is merely the agent of the creditor and debtor, and that it is his duty to secure the best results for both. He acted in an arbitrary and harsh manner, and without regard for whether the property would be sacrificed or not.

Under the circumstances, the court should have held that Miss Cooley had sufficient grounds to entitle her to set aside the sale.

The appellee relies strongly upon the case of South Texas Lumber Co. v. Burleson, 178 S. W. 961. It will be noticed that the opinion does not disclose the nature of the irregularities relied upon. The statements made by the court must have been made with reference to irregularities which were not calculated to prevent the property from bringing something like its reasonable value, for if taken literally it is not supported by the cases of Pearson v. Flanagan, 52 Tex. 280, and First Nat. Bank v. Land Co., 60 Tex. Civ. App. 315, 128 S. W. 436, cited in support thereof, nor by the other cases cited, for they involved collateral attacks upon execution

sales, and what was said therein had reference to the question whether the irregularities made the writ void, and not whether they were sufficient to require that the sale be set aside upon direct attack. See Collins v. Hines, 100 Tex. 304, 99 S. W. 400, for discussion of this point. Appellee also relies upon said case of South Texas Lumber Co. v. Burleson, 178 S. W. 961, for the purpose of showing that the facts of this case do not authorize relief at the instance of the judgment creditor. We regard the facts of this case as much stronger than those stated in the opinion in that case.

The contentions presented by the eleventh, thirteenth, and fourteenth assignments cannot be sustained.

The judgment is reversed, and judgment rendered setting aside the sale to appellee and canceling the deed made him by the sheriff; that appellant Wagner and wife have their writ of possession for the premises described in their petition. It is further adjudged that appellee do have and recover of appellants the sum of $625. The costs in the trial court and of the appeal will be assessed against appellee.

### On Motion for Rehearing.

[7, 8] Appellants have filed a motion for rehearing and to reform the judgment. We are requested to award a recovery of rents for the time intervening between the date Hudler took possession and the date of the trial. The trial court made no finding on the point, and we regarded the evidence as of such uncertain character as to furnish no basis for fixing the amount of rents, and therefore refused to allow same. Being still of the same opinion, the judgment will be reformed so as to expressly provide that appellants Wagner take nothing by their plea for rents for the period mentioned. The rents accruing after the trial must be demanded, of course, in a separate suit.

[9, 10] We are also requested to adjudge that the sheriff repay to Hudler the money in his hands, and to eliminate from our judgment the award in favor of Hudler against appellants of the sum of $625. In this connection, our attention has been called to the fact that the appellants paid the sum of $625 into the registry of the court, thus making good their tender. The money in the hands of the sheriff should have been paid into the registry of the court to await the result of the trial. As an officer of the court was holding money collected under process of the court, the court upon motion would have been authorized to require that such money be paid into the registry of the court. This was not done. The sheriff not being a party to this suit, no judgment can be rendered by this court against him. We therefore conclude that the judgment should be reformed to this extent, that it shall provide that, if the money in the hands of the sheriff is repaid by him to Hudler, such payment shall operate as a satisfaction, to that extent of the judgment herein rendered by this court in favor of Hudler against appellants, and the judgment is further amended as to provide that, upon the satisfaction of said judgment being duly shown, the clerk of the court is authorized to repay to appellants the money paid by them into the registry of the court.

These changes, not being those requested in the motion, will be made upon motion of the court, and said motion of appellants will be overruled.